



ORIGINAL

Priority ☒
Send ☒
Enter
Closed ——
JS-5/JS-6 ——
JS-2/JS-3 ——
Scan Only ——

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PERFECT 10, INC.,

           Plaintiff,

   v.

CCBILL LLC, et al.,

           Defendants.

NO. CV 02-7624 LGB (SHx)

ORDER DENYING DEFENDANT COOGAN'S MOTION TO DISMISS, GRANTING DEFENDANT PAYCOM'S MOTION TO COMPEL ARBITRATION, STRIKING DEFENDANT PAYCOM'S MOTION TO SEVER

## I.   Introduction

This case involves allegations by Plaintiff Perfect 10, Inc., that Defendants are engaged in the willful and systematic infringement of Plaintiff's intellectual property rights; the intellectual property rights of third-party publishers, film owners, and celebrities; and the ongoing deception of consumers.

There are currently three motions before the Court. In the first motion, Defendant Clarence Coogan ("Coogan") moves to dismiss the case against him on the ground that the Court lacks personal jurisdiction. Defendant Paycom Billing Services, Inc. ("Paycom"),

1



brings two motions: first, to compel arbitration and stay
litigation, and second, to sever pursuant to Federal Rule of Civil
Procedure 21.

## II.  Factual and Procedural History

Plaintiff alleges the following: Plaintiff is the publisher of
the adult entertainment magazine *Perfect 10*. Compl. ¶ 24. Plaintiff
also owns and operates the website located at perfect10.com. Id.
The magazine *Perfect 10* has a circulation of over 90,000 copies per
issue. Id. Plaintiff's website receives approximately 100,000
visitors per month. Id. Plaintiff is the owner of a family of
trademarks. Id. ¶ 27. Plaintiff asserts that it has spent millions
of dollars advertising and promoting the Perfect 10 mark and owns
valuable goodwill symbolized by that mark.

Plaintiff brings this suit against three categories of
Defendants: Billing Company Defendants, AVS Defendants, and Content
Website Defendants. Plaintiff asserts that all Defendants are
engaged in the business of selling pornography on the internet.
Compl. ¶ 1. The Billing Company Defendants directly sell access to
adult content maintained on adult entertainment websites owned by
others ("Content Websites"), and provide critical transaction
processing and other business support for those websites. Id. The
AVS Defendants provide critical marketing, networking, and other
operational services for Content Websites that use the AVS
Defendants' systems. Id. The Content Website Defendants are owners
of Content Websites and directly maintain pornography and other
adult content on those websites. Id.

For the purposes of this motion, the Court need only consider two Defendants: Clarence Coogan and Paycom Billing Services, Inc. Clarence Coogan is classified as a Content Website Defendant. Compl. at 1. Paycom is a Billing Company Defendant. Id.

As to Defendant Coogan, Plaintiff alleges that he is an individual residing in Melbourne, Florida, and operating the pornographic website located at celebmovie.com. Compl. ¶ 19. Plaintiff alleges that Coogan conducts substantial business in California through his internet business. Id.

As to Defendant Paycom, Plaintiff alleges that Paycom is a Delaware corporation with its principal place of business in California. Compl. ¶ 12. Plaintiff alleges that Paycom owns and operates the website located at paycom.net. Id. Plaintiff further claims that Paycom jointly supports numerous Content Websites with AVS Defendant Massivepass, and that Paycom provides sales and other services for various Content Websites. Id.

Plaintiff filed suit on September 30, 2002, against twelve (12) Defendants on nine (9) causes of action. Plaintiff asserts the following causes of action: (1) copyright infringement, (2) trademark infringement, (3) trademark disparagement, (4) wrongful use of a registered mark, (5) violation of right of publicity, (6) unfair competition, (7) false and misleading advertising, (8) RICO (investment of proceeds), and (9) RICO (participation in criminal enterprise).

On December 13, 2002, Defendant Clarence Coogan filed a motion to dismiss for lack of personal jurisdiction. Plaintiff filed an

3

1   Opposition on December 30, 2002, and Defendant Coogan filed a Reply

2   on January 6, 2003.

3       On December 9, 2002, Defendant Paycom filed two motions: a

4   motion to compel arbitration and stay litigation, and a motion to

5   sever pursuant to Federal Rule of Civil Procedure 21. The Court

6   initially struck these motions on December 10, 2002, but vacated

7   that minute order on December 18, 2002. Plaintiff filed Oppositions

8   to the motions on December 30, 2002, and Defendant Paycom filed

9   Replies on January 6, 2003.

10  **III. Defendant Coogan's Motion to Dismiss for Lack of Personal**

11  **Jurisdiction**

12

13      Defendant Coogan asserts that the case should be dismissed as

14  to him because he is a Florida resident and this Court lacks

15  personal jurisdiction. Coogan MTD at 3. Plaintiff counters that

16  Coogan has sufficient contacts with California to establish

17  specific jurisdiction. Pl. Opp'n (Coogan) at 4.

18      **A.   Legal Standard**

19      Where there is no applicable federal statute governing

20  personal jurisdiction, the federal court applies the law of the

21  state in which it sits. Panavision Int'l v. Toeppen, 141 F.3d 1316,

22  1320 (9th Cir. 1998). Because California's long-arm statute is

23  coextensive with federal due process requirements, the

24  jurisdictional analysis under federal due process and state law are

25  the same. Dole Food Co. v. Watts, 303 F.3d 1104, 1110 (9th Cir.

26  2002).

27      The due process clause prohibits the exercise of jurisdiction

28

4

over nonresident defendants unless those defendants have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation omitted). In considering due process, the defendant's conduct and connection with the forum state must be such that he would "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). This requires some sort of "purposeful availment" of the privilege of conducting activities in the forum state. Id.

The Ninth Circuit has interpreted International Shoe and its progeny as allowing jurisdiction over a nonresident in two instances: (1) if the defendant's activities in the forum state are substantial, continuous, and systematic, creating general jurisdiction, or (2) if the specific cause of action arises out of the defendant's more limited contacts with the forum state, creating specific jurisdiction. Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001). Where, as here, there is no claim of general jurisdiction,[1] the court must apply a three-part test to evaluate the nature and quality of a defendant's contacts in connection with

_____

[1]Plaintiff does not assert that the Court has general jurisdiction over Defendant Coogan in its Opposition. See Pl. Opp'n (Coogan), at 3-4. Therefore, the Court will presume that it does not have general jurisdiction over Coogan, and will only consider whether specific jurisdiction exists.

the causes of action alleged so as to determine whether specific jurisdiction is available. Id.

First, the nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Id. Second, the claim must be one which arises out of or results from the defendant's forum-related activities. Id. Third, the exercise of jurisdiction must be reasonable. Id.

The plaintiff need only make a *prima facie* showing of jurisdictional facts. Dole, 303 F.3d at 1108. Although the plaintiff cannot simply rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true. Id. Conflicts between the parties over statements contained in affidavits must be resolved in favor of the plaintiff. Id.; AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588-89 (9th Cir. 1996).

**B.    Analysis**

      **1. Whether Coogan May Be Sued As Registered Owner of celebmovie.com**

Coogan first asserts that he is the president of a corporation whose assets include the website celebmovie.com. Coogan MTD at 3. Plaintiff has not sued the corporation. Id. As a result, Coogan argues that even if the activities of celebmovie.com somehow qualify for specific jurisdiction in California over the

corporation that owns the website, he personally cannot be sued, because he is merely an officer (the president) of the corporation. See Davis v. Metro Prods., Inc., 885 F.2d 515, 520 (9th Cir. 1989) (discussing fiduciary shield doctrine and stating that "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person").

Plaintiff counters that Coogan has not submitted any evidence that this unnamed corporation of which he is president owns the celebmovie.com website. Pl. Opp'n (Coogan) at 6. Further, there is no record with the Florida Secretary of State of any corporation of which Coogan is president. Id.; Decl. of Jeffrey Mausner, ¶ 3.[2]  In

_____

[2]Coogan moves to strike the entire declaration of Jeffrey Mausner on the ground that the witness is incompetent with no demonstrated personal knowledge of the underlying transactions in this matter. Coogan Reply at 2. Coogan further asserts that Mausner's assertions in paragraphs 2 and 3 of his declaration are inadmissible hearsay. Id. at 2-3. Finally, Coogan asserts that Mausner's assertions are not properly authenticated. Id. First, as to the declarant's competence, Mausner's Declaration as to these paragraphs was made pursuant to research that he personally conducted and observations that he personally made. Therefore, he is not incompetent to provide this information. Second, as to the hearsay objection, these records are subject to the absence of

1  fact, the celebmovie.com domain name is registered to Clarence

2  Coogan personally. Pl. Opp'n (Coogan) at 4; Decl. of Jeffrey

3  Mausner, ¶ 2.

4      Plaintiff need only make a *prima facie* showing of

5  jurisdictional facts. <u>Dole</u>, 303 F.3d at 1108. Conflicts between the

6  parties over statements contained in affidavits must be resolved in

7  favor of Plaintiff. <u>Id.</u> The facts that Coogan is the registered

8  owner of the allegedly infringing website and that there is no

9  record of any corporation of which Coogan is president together

10 constitute Plaintiff's required *prima facie* showing. Therefore,

11 this lawsuit may properly be maintained against Coogan, and this

12 basis for Coogan's motion to dismiss is rejected.

13

14         **2. Purposeful Availment of the Privilege of Doing**

15                     **Business in California**

16     Having concluded that Coogan is an appropriate Defendant, the

17 Court must consider the three questions set forth in <u>Doe v. Unocal</u>

18 <u>Corp.</u>, 248 F.3d 915, 923 (9th Cir. 2001). The first and most

19 complicated question is whether Coogan has performed some act by

20 which he purposefully availed himself of the privilege of doing

21 business in California, thereby invoking the benefits and

22

23 ───────────────

24 entry in business records exception to the hearsay rule. Fed. R.

25 Evid. 803(7). Third, as to Coogan's authentication objection, the

26 Court finds that the documents are properly authenticated.

27 Therefore, Coogan's motion to strike is denied as to paragraphs 2

28 and 3 of the Mausner Declaration.

protections of its laws. Id. Again, Plaintiff need only make a prima facie showing of jurisdictional facts. Dole, 303 F.3d at 1108. Uncontroverted allegations in the complaint must be taken as true. Id. Conflicts between the parties over statements contained in affidavits must be resolved in favor of the Plaintiff. Id.

Coogan argues that, as the operator of a Florida-based website, he has not engaged in any activities that constitute "purposeful availment" of the privilege of doing business in California. Coogan MTD at 11-12. Plaintiff counters that Coogan has directed activities towards California which had an effect in California, and thus, he has purposefully availed himself of the privilege of doing business in California. Pl. Opp'n (Coogan) at 6.

Coogan correctly states that the mere fact that an infringing work may be displayed for profit in the forum state does not constitute "purposeful availment." Coogan MTD at 11 (citing Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993)). Further, a defendant's mere knowledge that his activity is harming industries located in California is insufficient. Coogan MTD at 11 (citing Pavlovich v. Superior Court, 29 Cal. 4th 262 (2002)).

However, Plaintiff responds that Coogan has engaged in specific activities that constitute purposeful availment of the privilege of doing business in California. Plaintiff cites Dole Food Co. v. Watts, 303 F.3d 1104 (9th Cir. 2002), for the proposition that "purposeful availment is satisfied even by a defendant whose only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state." Id.

at 1111 (internal quotations omitted) (emphasis added). The "effects test" requires that defendant have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) causing harm that the defendant knows is likely to be suffered in the forum state. <u>Id.</u>; <u>Bancroft & Masters, Inc. v. Augusta Nat'l Inc.</u>, 223 F.3d 1082, 1087 (9th Cir. 2000).

Plaintiff discusses <u>Colt Studio, Inc. v. Badpuppy Enter.</u>, 75 F. Supp. 2d 1104 (C.D. Cal. 1999), at length to illustrate a similar situation involving purposeful availment by an out-of-state website. In <u>Colt</u>, the holder of copyrights on photographs of nude males brought an infringement action against a seller of internet subscriptions, alleging that defendants' website was engaged in unauthorized distribution of copyrighted photographs. <u>Id.</u> at 1106. A small percentage of defendants' subscribers were California residents (2,100 of 17,000 total subscribers). <u>Id.</u> The court found that each subscription constituted an agreement between defendants and a customer. <u>Id.</u> at 1109-1110. The creation of these agreements created continuing obligations between defendants and a substantial number of California residents, albeit a small percentage of defendants' total business. <u>Id.</u> As a result, the Court concluded that the defendants had purposefully availed themselves to California as a forum. <u>Id.</u>

Plaintiff argues that Coogan has behaved in a similar manner to the defendants in <u>Colt</u>. The business conducted by the celebmovie.com website consists of selling membership subscriptions to individuals in California and elsewhere. Pl. Opp'n (Coogan) at

10

7. By Coogan's admission, the website generates three to four percent (3-4%) of its gross revenues from subscribers in California. Id.; Decl. of Clarence Coogan, ¶ 5. As in Colt, Coogan's website sells subscriptions that create agreements between the website and its subscribers. Pl. Opp'n (Coogan) at 7. Therefore, in accord with Colt, Coogan's website creates "continuing obligations" between the website and a substantial number of California residents. Id. at 7-8. Coogan disputes Plaintiff's argument on the basis that celebmovie.com does not contract with California customers as a matter of law. Coogan Reply at 9. However, the agreements that Coogan's customers enter into permit customers to view images on celebmovie.com in exchange for a subscription fee. These agreements are very similar to the agreements at issue in Colt, which also allowed customers to view images on defendants' website in exchange for a subscription fee. The fact that customers of celebmovie.com enter into subscriptions via an "authorized payment processor" (PayPal) does not change the basic fact that there are ongoing obligations between Coogan's website and the California customers.

Plaintiff argues that an additional factor not present in Colt is present in this case, which constitutes additional purposeful availment by Coogan of this forum. Coogan's website states that PayPal is the authorized payment processor for celebmovie.com. Decl. of Jeffrey Mausner, Ex. 9.[3] According to the subscriber's

---

[3]Defendant Coogan objects to Exhibit 9 to the Mausner Declaration on the grounds that the printout from PayPal is

agreement with PayPal, all subscribers subject themselves to the applicability of California law and to personal jurisdiction in California. Id. ¶ 18, 19. Coogan argues that contracts between subscribers and PayPal have no bearing on the court's jurisdiction over Coogan. Coogan Reply at 9. However, PayPal is listed as the "authorized payment processor" for celebmovie.com. To do business with celebmovie.com, a customer must go through PayPal and must agree to subject themselves to personal jurisdiction in California. The fact that Coogan subjects all his customers to jurisdiction in California demonstrates that he has purposefully availed himself of the privilege of doing business in this state.

Contrary to Coogan's assertions, this is not a case involving a passive website. Websites are classified along a sliding scale in

---

unauthenticated hearsay. Paragraph 10 of the Mausner Declaration sufficiently authenticates Exhibit 9. As to Defendant Coogan's hearsay objection, Plaintiff correctly points out that to the extent website print-outs are introduced to show the images and text found on the websites, they are not statements at all and fall outside the ambit of the hearsay rule. Pl. Resp. to Def. Coogan's Mot. to Strike at 3 (citing Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002)). Defendant Coogan's objections to Exhibit 9 of the Mausner Declaration are without merit. Coogan's motion to strike is denied as to Exhibit 9 to the Mausner Declaration.

12

terms of the degree of interaction with the customer and the website. See Pavlovich, 29 Cal. 4th at 274. According to the California Supreme Court:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Id. Plaintiff has sufficiently alleged that celebmovie.com does more than merely provide information as a passive website. In fact, the Pavlovich court's description of the website at the opposite end of the spectrum – a website allowing customers to enter into contracts and repeatedly transmit computer files – is an apt description of celebmovie.com, according to Plaintiff's allegations. Coogan argues that because the website is not

13

specifically directed toward California residents, it is passive. Coogan MTD at 9; Decl. of Clarence Coogan, ¶ 5. However, the question is whether the website permits customers to enter into contracts involving repeated transmission of computer files. Coogan's assertion does not rebut that aspect. Further, Coogan argues that because subscriptions to the website are handled by a third-party billing entity, this renders the website passive. <u>Id.</u> Whether a third party ultimately bills the customer is irrelevant to the fact that customers of celebmovie.com enter into contracts involving repeated transmission of computer files. Coogan's assertion that celebmovie.com is a passive website is unsupported by the facts asserted by Plaintiff or the law as set forth in <u>Pavlovich</u>.

Having considered the activities of Coogan's website in light of <u>Colt</u> and <u>Pavlovich</u>, it is clear that all three elements of the "effects test" are satisfied.

First, the requisite intentional act is the alleged infringement of Plaintiff's copyrights by Coogan's website. Coogan concedes that he is the sole operator of the celebmovie.com website and that there are no other employees. Decl. of Clarence Coogan, ¶ 8. Therefore, Plaintiff has sufficiently alleged that any infringing images on the website were placed there by Coogan.

The second element is whether Coogan's actions were expressly aimed at California. Coogan has conceded that three to four percent (3-4%) of celebmovie.com's total gross revenue was derived from California. <u>Id.</u> ¶ 5. In considering whether a website has expressly

14

aimed itself at a forum state, courts have considered the number of customers from that state. See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997). Although advertisement is not sufficient to subject the advertiser to jurisdiction, where marketing efforts were directed at residents of that state (as indicated by sales to customers in that state), a court may find defendant to have expressly aimed itself at the state. Id. The court concludes that Plaintiff has sufficiently alleged that celebmovie.com's intentional acts were expressly aimed at customers in California.

Finally, the third element is whether Coogan's actions caused harm that Coogan knew was likely to be suffered in California. Again, given that the complaint alleges celebmovie.com infringed Plaintiff's copyrights, there is sufficient evidence that Coogan knew such infringement would harm Plaintiff, a California corporation. Therefore, Plaintiff has sufficiently alleged that the harm alleged was suffered in California.

Based on all the foregoing, the Court concludes that the first factor set forth in Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001), to establish specific jurisdiction is satisfied with respect to Defendant Coogan.

### 3.   Claim Arises Out Of Forum-Related Activities

The second requisite under Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001), is that Plaintiff's claim arises out of or results from Defendant Coogan's forum-related activities. The Ninth Circuit utilizes a "but for" test in determining whether the claim

arises out of the non-resident's forum-related activities. <u>Colt</u>, 75 F. Supp. 2d at 1110. As such, the determining factor is whether plaintiff would not have suffered loss but for defendant's activities. <u>Id.</u>

As was the case in <u>Colt</u>, this requirement is easily satisfied in this case. The forum-related activity at issue is the display of copyrighted images on Defendant Coogan's website. The harm suffered is the violation of Plaintiff's copyright. Therefore, but for the display of photos, plaintiff's copyright interest in them would not have been infringed.

Defendant Coogan asserts that the claim instead arises out the website's operation in Florida, not any conduct in California. Coogan MTD at 12. However, as discussed above, a significant portion of celebmovie.com's revenues were derived from California customers, even though the website was operated from an office in Florida. Defendant Coogan further argues that he has had no communication with Plaintiff prior to this lawsuit and never entered into contracts with Plaintiff. <u>Id.</u> However, this is not relevant, since this is not an action for breach of contract, but for copyright and trademark infringement. Therefore, Defendant Coogan has not convinced the Court that Plaintiff's claim does not arise out of Coogan's California-related activities. The second element of the <u>Doe v. Unocal Corp.</u> test is satisfied.

**4.   Personal Jurisdiction is Reasonable**

The final consideration under <u>Doe v. Unocal Corp.</u>, 248 F.3d 915, 923 (9th Cir. 2001), is whether exercise of jurisdiction is

16

reasonable.   The   Ninth   Circuit   considers   seven   factors   when assessing   the   reasonableness   of   jurisdiction:   (1)   the   extent   of Defendant's   purposeful   interjection;   (2)   the   burden   on   Defendant   of defending   in   the   forum;   (3)   the   extent   of   conflict   with   the sovereignty   of   Defendant's   state;   (4)   the   forum   state's   interest   in adjudicating   the   dispute;   (5)   the   most   efficient   judicial resolution   of   the   case;   (6)   the   importance   of   the   forum   to Plaintiff's   interest   in   convenient   and   effective   relief;   and   (7) the   existence   of   an   alternative   forum.   <u>Panavision</u>,   141   F.3d   at 1323.   The   Court   must   consider   and   balance   all   seven   factors.

### a.   Purposeful Interjection

The   first   consideration   is   the   extent   of   Defendant's purposeful   interjection   into   California.   It   is   undisputed   that three   to   four   percent   (3-4%)   of   celebmovie.com's   revenue   comes   from California   residents.   Decl.   of   Clarence   Coogan,   ¶   5.   It   is   not clear   from   the   parties'   papers   how   many   customers   this   includes. Although   this   is   a   sufficient   number   to   constitute   purposeful availment,   it   is   clear   that   California   customers   do   not   constitute the   majority   of   celebmovie.com's   business.   However,   Plaintiff   also argues   that   all   of   celebmovie.com's   subscribers   who   subscribe through   the   "authorized   payment   processor,"   PayPal,   subject themselves   to   the   personal   jurisdiction   of   California.   Decl.   of Jeffrey   Mausner,   Ex.   9.   This   suggests   that   Defendant's   purposeful interjection   into   California   has   a   broader   extent   than   the relatively   small   percentage   of   revenue   from   California   customers would   suggest.   Therefore,   this   factor   weighs   in   favor   of   a   finding

1    that personal jurisdiction is reasonable.

2                    **b.    Defendant's Burden in Litigating**

3         The second consideration is the burden on Defendant of

4    defending in California. It is undisputed that it would be more

5    convenient for Defendant Coogan to litigate the case in Florida. He

6    states that his presence in Florida, where the website is operated,

7    is essential to the business's success and his own personal

8    welfare. Decl. of Clarence Coogan, ¶ 9. However, as the court

9    stated in Panavision, this sort of inconvenience does not deprive

10   an out-of-state litigant of due process, particularly "in this era

11   of fax machines and discount air travel." 141 F.3d at 1323. This

12   factor weighs in favor of Coogan's argument that personal

13   jurisdiction is unreasonable.

14

15                    **c.    Sovereignty**

16        The third consideration is the extent to which the district

17   court's exercise of jurisdiction in California would conflict with

18   the sovereignty of Florida. As in Panavision, such a conflict is

19   not at issue in this case. 141 F.3d at 1323. The federal analysis

20   of copyright and trademark infringement would be the same in either

21   Florida or California. Therefore, sovereignty concerns do not weigh

22   in favor of either side.

23                    **d.    Forum State's Interest**

24        The fourth consideration is the extent of California's

25   interest in maintaining the action. California has a strong

26   interest in providing an effective means of redress for its

27   residents. Panavision, 141 F.3d at 1323. Plaintiff's principal

28

                                   18

place of business is in California. Further, Plaintiff has asserted claims on behalf of third parties, many of whom reside in California. Def. Opp'n (Coogan) at 11-12. Defendant Coogan claims that Plaintiff has not provided evidence that these third parties have been specifically injured by Coogan's acts; however, for the purposes of this motion, the Court must accept Plaintiff's affidavits where a conflict exists. Therefore, this factor weighs in favor of a finding that personal jurisdiction is reasonable.

### e.   Efficient Resolution

The fifth factor focuses on efficient resolution of the case, particularly the location of evidence and witnesses. Defendant Coogan does not dispute that the case would be more efficiently resolved in California; however, he states that such efficiency concerns are trumped by considerations of fairness. Coogan Reply at 13. Plaintiff has filed this suit against twelve (12) defendants. One defendant, CCBill, already admitted in its Answer that it entered into a contract with Coogan to provide billing services to celebmovie.com. The evidence and witnesses involved in the case against the other eleven (11) defendants will likely be much the same as the evidence and witnesses involved in the case against Defendant Coogan. It would be highly inefficient to litigate the case against Defendant Coogan in Florida, and the case against the other eleven defendants in California. Therefore, this factor weighs in favor of a finding that personal jurisdiction is reasonable.

///

19

### f.   Convenient and Effective Relief for Plaintiff

Generally, the Court should not give much weight to the sixth factor, the inconvenience of the Plaintiff in litigating in another forum. <u>Panavision</u>, 141 F.3d at 1324. In this case, Plaintiff argues that it would be inconvenient and unfair to force Plaintiff to chase defendants who unlawfully copy its photographs all over the world (or, in this case, to Florida) to seek redress. Pl. Opp'n (Coogan) at 12. Therefore, to the extent the Court considers this factor, it weighs in favor of a finding that personal jurisdiction is reasonable over Coogan in California.

### g.   Alternative Forum

The seventh and final consideration is whether an alternative forum exists for Plaintiff's claims. Here, an alternative forum does exist: Florida. Plaintiff has not argued that there is a lack of alternative forum, but states that this factor alone is insufficient to overcome the other factors. Therefore, this factor weighs in favor of Coogan's argument that personal jurisdiction is unreasonable.

### h.   Conclusion Re: Reasonableness

Having considered and balanced the seven <u>Panavision</u> factors, the Court concludes that although some factors weigh in Defendant Coogan's favor, he failed to present a convincing case that exercise of personal jurisdiction in California would be unreasonable. The <u>Panavision</u> factors weigh heavily in favor of a conclusion that the exercise of personal jurisdiction over

20

1   Defendant Coogan is reasonable.

2       **C.   Conclusion**

3       All the requirements for the exercise of specific personal

4   jurisdiction are satisfied. Defendant Coogan purposefully availed

5   himself of the privilege of conducting activities in California.

6   Plaintiff's claims arise out of or result from Defendant Coogan's

7   California-related activities. Finally, exercise of jurisdiction

8   over Defendant Coogan is reasonable. Based on all the foregoing,

9   the Court DENIES Defendant Coogan's motion to dismiss based on lack

10  of personal jurisdiction.

11  **IV.  Defendant Paycom's Motion to Compel Arbitration and Stay**

12       **Litigation**

13      Defendant Paycom moves to compel arbitration and stay

14  litigation[4] pursuant to an agreement between Paycom and Plaintiff,

15

16

17  ─────────────────

18       [4]A motion for stay of litigation pending arbitration is not

19  listed among the seven pre-Answer motions of Federal Rule of

20  Civil Procedure 12(b). However, courts have held this list not to

21  be exclusive and have determined that a motion to stay litigation

22  is a pre-Answer motion within the scope of Rule 12(b). See In re

23  Barney's, Inc., 206 B.R. 336, 340-41 (S.D.N.Y. 1997). One

24  rationale for this rule is that a court lacks jurisdiction where

25  the suit is referable to arbitration, and thus a motion for stay

26  of litigation pending arbitration is essentially a motion

27  pursuant to Rule 12(b)(1) on the ground that the Court lacks

28
                                   21

signed on March 2, 2001. See Decl. of Jeffrey Thaler, Ex. A (Epoch Transaction Services Universal Services Agreement) (the "Agreement"). Paragraph 19(f) of this Agreement states: "The parties hereby irrevocably submit any and all disputes arising under this Agreement to binding arbitration to be conducted in accordance with the laws of California before Judicial Arbitrations and Mediation Services (JAMS) in Santa Monica, California." Id. Plaintiff argues that this lawsuit does not "arise under" the Agreement, and therefore the arbitration clause is inapplicable. Pl. Opp'n (Paycom Arb.) at 3.

**A.   Legal Standard**

The Federal Arbitration Act ("FAA") provides that, for contracts involving commerce, a written provision to settle by arbitration a controversy thereafter arising out of such contract shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The preeminent concern of Congress in passing the FAA was to enforce private agreements to arbitrate disputes. Perry v. Thomas, 482 U.S. 483, 490 (1987). The Supreme Court has held that arbitration agreements must be "rigorously enforced," id., and that the policy of the FAA requires a liberal reading of arbitration agreements. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 n.27 (1983).

The FAA leaves no discretion for the district court in enforcing arbitration agreements. Instead, it "mandates that

_____

subject matter jurisdiction. Evans v. Hudson Coal Co., 165 F.2d 970, 972 (3d Cir. 1948).

22

district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has ben signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). There is a presumption of arbitrability, such that an order to arbitrate should not be denied unless the court can conclude "with positive assurance" that the arbitration clause is not susceptible to an interpretation covering the dispute. AT&T Techs. v. Communications Workers of America, 475 U.S. 643, 650 (1986). This is a strong presumption and doubts should be resolved in favor of coverage. Id.

When presented with a motion to compel arbitration and stay litigation, the court's role is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator. Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 478 (9th Cir. 1991). The most minimal indication of the parties' intent to arbitrate must be given full effect. Id.

**B.    Analysis**

Defendant Paycom argues that the arbitration clause in the parties' agreement must be enforced. Under the arbitration clause, Plaintiff and Paycom agreed to arbitrate "any and all disputes arising under this Agreement." Decl. of Jeffrey Thaler, Ex. A, ¶ 19(f). Plaintiff argues that its claims for copyright, trademark, and rights of publicity infringement, and for violation of unfair competition laws and federal Racketeer Influenced and Corrupt Organizations Act ("RICO") do not arise under the Agreement between

23

1  Plaintiff and Paycom, and therefore the arbitration clause does not

2  apply to this case. Pl. Opp'n (Paycom Arb.) at 3.

3      Defendant Paycom argues that there are three specific respects

4  in which Plaintiff's claims arise under the Agreement between

5  Plaintiff and Paycom: (1) Paycom's status as and/or right to be

6  treated as an internet service provider ("ISP"), pursuant to the

7  Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512 <u>et seq.</u>,

8  an issue of central importance to the case is specifically

9  addressed by the contract; (2) Plaintiff's claims are governed by

10  a limitation of liability provision in the contract; and (3) the

11  Agreement sets up a system of notification of copyright

12  infringements that governs Plaintiff's allegations of copyright

13  infringement in this suit. Def. Paycom's Mot. to Compel Arb. at 1-

14

15  2.

16      The arbitration clause at issue here applies to "any and all

17  disputes arising under this Agreement." Decl. of Jeffrey Thaler,

18  Ex. A, ¶ 19(f). The Ninth Circuit has classified arbitration

19  clauses with the language "arising under" as relatively narrow,

20  compared to the broader "arising out of or relating to" language

21  recommended by the American Arbitration Association. <u>Mediterranean</u>

22  <u>Enters., Inc. v. Ssangyong Corp.</u>, 708 F.2d 1458, 1464 (9th Cir.

23  1983). The Ninth Circuit concluded that an "arising under"

24  arbitration clause covers a narrower range of disputes: "only those

25  relating to the interpretation and performance of the contract

26  itself." <u>Id.</u> However, even though this language is "relatively

27  narrow," it is still subject to the general rule that requires a

28

24

liberal reading of arbitration clauses. <u>Moses H. Cone</u>, 460 U.S. at 22 n.27. The question, therefore, is whether Plaintiff's claims "arise under" the Agreement between Plaintiff and Paycom in that they relate to the interpretation of the Agreement and the performance of the Agreement. The Court will now consider each of the three ways that Defendant Paycom argues the claims arise under the Agreement.

Defendant Paycom first argues that Paycom's status as an ISP under the DMCA is an issue of central importance to Plaintiff's claims. This issue, according to Paycom, is specifically addressed by the Agreement. Therefore, Plaintiff's claims relate to the interpretation of the Agreement, and the arbitration clause applies.

Plaintiff responds that the Agreement between Plaintiff and Paycom is entirely independent from the causes of action alleged in this case. According to Plaintiff, the Agreement is essentially a Billing Agreement between the two, whereby Plaintiff retained Paycom to provide online transaction processing and reporting services for perfect10.com. Pl. Opp'n (Paycom Arb.) at 6. Thus, when a customer wants to purchase access to Plaintiff's website, Paycom takes the payment and sells the goods or services offered at the website. <u>Id.</u> Plaintiff argues that the action against Paycom exists completely independent from Paycom's role in providing billing services for perfect10.com. <u>Id.</u> The claims alleged against Paycom in this case arise from Paycom's relationships with other unrelated internet businesses that display images that Plaintiff

1   alleges have been misappropriated from Plaintiff. Id. Plaintiff

2   argues it is "simply fortuitous that the parties happen to have a

3   contractual relationship." Id. at 6-7 (citing Coors Brewing Co. v.

4   Molson Breweries, 51 F.3d 1511, 1516 (10th Cir. 1995)).

5       This is not a situation, however, like the one envisioned in

6   Coors, in which the parties' contract was completely independent of

7   the claims alleged. In Coors, the court described a situation where

8   two small business owners executed a sales contract with a general

9   arbitration clause, and then one individual assaulted the other.

10  Id. at 1516. It would be absurd, the court concluded, to require

11  the victim to arbitrate the tort claim because the tort claim was

12  not related to the sales contract. Id. Here, by contrast, the

13  alleged copyright infringement involves issues that the parties

14  have already resolved in their Agreement, namely whether Paycom is

15  an ISP.

16

17      Plaintiff's first cause of action against Paycom is a claim of

18  copyright infringement under federal law. Federal copyright law was

19  amended in 1998 to include the provisions of the DMCA. The DMCA

20  protects an ISP from liability for the acts of those using their

21  services as long as the ISP complies with certain procedural

22  requirements. See 17 U.S.C. §§ 512 et seq.; Def. Paycom's Mot.

23  Compelling Arb. at 9. Plaintiff argues that the question of whether

24  Paycom will be treated as an ISP under the DMCA is not an issue

25  governed by the Agreement, but by an analysis of the statute and

26  the manner in which Paycom has conducted business with other

27  allegedly infringing Defendants. Pl. Opp'n (Paycom Arb.) at 9.

28

This question is specifically addressed by the Agreement. Paragraph 18 of the Agreement states that "Both parties acknowledge that Service Provider [Paycom] is an internet service provider, as that term is defined in the Digital Millennium Copyright Act ("DMCA")." Decl. of Jeffrey Thaler, Ex. A, ¶ 18. Given this provision of the Agreement, Plaintiff is estopped from now arguing that Paycom is not an ISP. Such a determination is appropriate for an arbitrator. There is a presumption of arbitrability, and the Court should not deny an order to arbitrate unless it concludes "with positive assurance" that the arbitration clause is not susceptible to an interpretation covering the dispute. AT&T Techs. v. Communications Workers of America, 475 U.S. 643, 650 (1986). This is a strong presumption and doubts should be resolved in favor of coverage. Id. Even under the narrow interpretation of the arbitration clause (as set forth in Mediterranean), the arbitration clause is applicable to the case. Therefore, Plaintiff's claims relate to the interpretation and performance of the Agreement.

Because the Court concludes that Plaintiff's claim against Paycom arises under the Agreement between Plaintiff and Paycom, the arbitration clause in the Agreement is applicable. Although Plaintiff's claims may have arisen separately from the Agreement, the claims relate to the interpretation and performance of the Agreement. Because the arbitration clause is applicable, it must be "rigorously enforced." Perry, 482 U.S. at 490. This Court does not have discretion, but is required to direct the parties to proceed to arbitration. Dean Witter, 470 U.S. at 218. As a result, the

1    Court need not consider Paycom's other arguments regarding why the

2    arbitration clause is applicable.

3         The final issue is what to do with the balance of the case

4    while Plaintiff and Paycom engage in arbitration pursuant to their

5    Agreement. The Court may not compel parties to arbitrate who are

6    not parties to the arbitration agreement. <u>Encore Prods., Inc. v.</u>

7    <u>Promise Keepers</u>, 53 F. Supp. 2d 1101, 1113 (D. Colo. 1999).

8    However, a plaintiff may not avoid arbitration merely by asserting

9    that one or more of its claims is against a defendant who is not

10   subject to the arbitration agreement. <u>Id.</u> The FAA states that,

11   where any issue in a suit is referable to arbitration, the Court

12   shall, on application of one of the parties, stay the trial of the

13   action until arbitration is complete. 9 U.S.C. § 3. Plaintiff's

14   Opposition does not address the issue of whether to stay the entire

15   case while Plaintiff and Paycom are involved in arbitration.

16   However, Paycom has filed a motion to sever its case from that of

17   its co-defendants, which Plaintiff opposes. Judicial economy would

18   best be served by staying the entire case while Plaintiff and

19   Paycom arbitrate, as mandated by 9 U.S.C. § 3, and thereafter

20   litigating the entire case.

21        The Court GRANTS Defendant Paycom's motion to compel

22   arbitration and stay litigation. Plaintiff and Defendant Paycom are

23   ORDERED to engage in arbitration, following the procedures set

24   forth in the arbitration clause of their Agreement at Paragraph

25   19(f). The entire case is STAYED during the arbitration. Plaintiff

26   and Defendant Paycom are further ORDERED to file joint status

reports every sixty (60) days to inform the Court as to the status of the arbitration.

**V.    Defendant Paycom's Motion to Sever**

Based on the fact that the Court has granted Defendant Paycom's motion to compel arbitration and stay litigation, the Court concludes that Defendant Paycom's Motion to Sever Pursuant to Federal Rule of Civil Procedure 21 is premature. Following arbitration, if necessary, Defendant Paycom may refile this motion. The motion is hereby STRICKEN.

**VI.   Conclusion**

Based on the foregoing:

(1) Defendant Coogan's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED;

(2) Defendant Paycom's Motion to Compel Arbitration and Stay Litigation is GRANTED. Plaintiff and Defendant Paycom are ORDERED to engage in arbitration, as mandated by the arbitration clause in their Agreement at Paragraph 19(f). The entire case is STAYED during the arbitration. The parties are further ORDERED to file joint status reports every sixty (60) days to inform the Court as to the status of the arbitration.

///
///
///
///
///
///

1    (3)  Defendant  Paycom's  Motion  to  Sever  is  STRICKEN  as

2  premature.

3    IT IS SO ORDERED.

4

5  Dated: _January 23, 2003_

6

7    LOURDES G. BAIRD
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

30